## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| v. | Cr. No. 06- |
| | Violation: 18 U.S.C. § 371 (Conspiracy to Commit Mail Fraud) |
| **ORLANDO MARSHALL,** | |
| Defendant. | |

## INFORMATION

The United States Attorney informs the Court that:

### COUNT ONE – CONSPIRACY

At all times material to this Information:

1. Gateway Computers ("Gateway") manufactured personal computers and related components for businesses and individuals. Although its headquarters was in Iowa, Gateway maintained a manufacturing and distribution plant in Hampton, Virginia. Gateway shipped personal computers and related components (referred to collectively herein as "computers") throughout the United States from its Hampton facility.

2. Defendant ORLANDO MARSHALL was employed by the District of Columbia Child and Family Services Agency as a social worker. He worked at 400 6th Street, S.W., Washington, D.C., and resided at 103 G Street, S.W., Washington, D.C., 20024.

3. D.S. was an employee of Gateway at the Hampton facility.

4. C.E. was an acquaintance of Marshall's who operated a school in the District of Columbia.

5. M.R. was a relative of Marshall's who had previously worked at the Gateway facility in Hampton.

6. A.J. was employed by the District of Columbia Child and Family Services Agency as a social worker. He worked in the District of Columbia and resided in Prince George's County, Maryland.

### The Conspiracy

7. From between in or about May, 2001, until in or about May, 2002, in the District of Columbia and elsewhere, defendant MARSHALL, D.S., M.R., C.E., A.J. and others whose identities are known and unknown to the United States (sometimes referred to as "co-conspirators") did unlawfully and knowingly combine, conspire, confederate and agree together and with each other to commit the offense of Mail Fraud against the United States, in violation of 18 U.S.C. § 1341.

### The Goal of the Conspiracy

8. The goal of the conspiracy was to obtain money by stealing Gateway computers from the Hampton distribution facility and selling them throughout the District of Columbia, Maryland, Virginia and elsewhere.

### Manner and Means of the Conspiracy

9. In order to achieve the goal of the conspiracy, defendant MARSHALL, D.S., M.R, C.E., A.J., and others whose identities are known and unknown to the United States used the following manner and means, among others:

    a. MARSHALL identified people throughout the District of Columbia metropolitan area who wanted to purchase Gateway computers. Among the people that MARSHALL identified as a customer was co-conspirator A.J.

    b. MARSHALL then arranged for his customers to receive stolen Gateway computers.

He did this in two ways. MARSHALL either put the customers in contact with his co-conspirators so that the co-conspirators could take the customer's order and receive payment, or he personally accepted orders for Gateway computers and received payment in full from the customers for the computers.

      c.      M.R. and D.S. caused Gateway computers to be diverted from the Hampton facility inventory system without paying Gateway and without Gateway's authorization. M.R. and D.S. also caused Gateway computers to be sent either directly to customers that MARSHALL or the co-conspirators had recruited or to MARSHALL at his home address within the District of Columbia for delivery to the recruited customers. The Gateway computers were sent and delivered via the United Parcel Service, a private interstate carrier.

      d.      MARSHALL shared the proceeds that he received from his recruited customers for distributing the Gateway computers with the co-coconspirators.

Overt Acts

10.      Within the District of Columbia, and elsewhere, in furtherance of the above-described conspiracy and in order to carry out the objects thereof, defendant MARSHALL, D.S., M.R., C.E., A.J., and others known and unknown to the United States committed the following overt acts, among others:

      a.      In or about July, 2001, MARSHALL entered into an agreement with unindicted co-coconspirator M.R. to market and sell stolen Gateway computers in the District of Columbia and elsewhere.

      b.      On or about July 24, 2001, MARSHALL received a shipment of Gateway computers at his home address of 103 G Street, S.W., Washington, D.C. This shipment consisted of computers

that unindicted co-conspirators D.S. and M.R. had caused to be diverted from the Gateway inventory system and shipped to MARSHALL's home for distribution in the Washington, D.C., area via the United Parcel Service.

  c. Contemporaneously with the July 24, 2001, shipment of two diverted Gateway computers, although the exact date is unknown to the United States, MARSHALL accepted payment for these two computers from a person whose identity is known to the United States and who is referred to herein as W-1.

  d. Contemporaneously with the payment described in paragraph 9(c), although the exact date is unknown to the United States, MARSHALL delivered the two stolen Gateway computers that he had received on July 24, 2001 to W-1.

**(Conspiracy, Aiding and Abetting, Causing an Act to be Done,
in violation of Title 18, United States Code, Sections 371 and 2.)**

              KENNETH L. WAINSTEIN
              UNITED STATES ATTORNEY

              _____
              Sarah T. Chasson
              Assistant United States Attorney
              D.C. Bar. No. 448-994
              Fraud and Public Corruption Section
              555 4th Street, N.W.
              Washington, D.C.  20001
              (202) 514-7248